UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHAFI ENTERPRISES, LLC,

    Plaintiff,

v.

TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,

    Defendant.

Case No. 21-CV-861-JPS

**ORDER**

---

**1.**     **INTRODUCTION**

On June 17, 2021, Plaintiff Shafi Enterprises, LLC ("Shafi") filed this action in Milwaukee County Circuit Court, alleging wrongful denial of insurance benefits by its insurer, Defendant Travelers Casualty Insurance Company of America ("Travelers"). ECF No. 1-1. Shafi pleads two claims, respectively titled (1) "Breach of Contract" and (2) "Failure to Pay Business Income." *Id.* On July 21, 2021, Travelers removed the action on diversity jurisdiction grounds, and the action was assigned to this branch of the Court. ECF No. 1. The action presently comes before the Court on Travelers' motion for partial summary judgment; Travelers moves for summary judgment on only Shafi's "Failure to Pay Business Income" claim. ECF No. 22. For the reasons stated herein, the Court will grant Travelers' motion for partial summary judgment.

**2.**     **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

3.    **RELEVANT FACTS**[1]

    3.1    **The Policy**

Travelers issued an insurance policy to Shafi with a policy period from April 26, 2019 to April 26, 2020 (the "Policy"). The "Business Income and Extra Expense" provision of the Policy contains the following language:

---

[1] The parties submit a stipulated statement of undisputed, material facts. ECF No. 23 at 1–8. In large part, the parties' proffered undisputed facts are irrelevant and immaterial. For purposes of Travelers' motion for partial summary judgment, the Court will adopt the *relevant and material* stipulated facts with minor, non-substantive edits.

For its part, Shafi submits five itemized, disputed facts, all of which allege Dr. Shafi's and his realtor, David Marek's, opinions on the length of the post-Loss repairs and marketability of Shafi Plaza. *Id.* at 9 (capitalized terms as defined *infra*). The Court finds these proposed disputed facts not only speculative, but also immaterial to the dispositive question of contract interpretation, as discussed herein.

3. Business Income and Extra Expense

    a. Business Income

        (1) Business Income means:

            (a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred, including:

                (i) "Rental Value"; and

                (ii) "Maintenance Fees", if you are a condominium association; and

            (b) Continuing normal operating expenses incurred, including pay-roll.

        (2) We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. [….]

Such business interruption insurance coverage is further limited to 12 consecutive months following a loss. "Rental Value" is defined in the "Property Definitions" as:

G. PROPERTY DEFINITIONS

    24. "Rental Value" means Business Income that consists of:

    a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including the fair rental value of any portion of the described premises which is occupied by you; and

    b. Continuing normal operating expenses incurred in connection with that premises, including:

        (1) Payroll; and

> (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

### 3.2 The Property and Its Rental History

Dr. Mohammad Shafi ("Dr. Shafi") is the sole owner of Shafi. Shafi owns a commercial retail and office space that was built in 2008 ("Shafi Plaza"). Shafi Plaza is comprised of three floors of rental space. Luma Health Care Inc. ("Luma") leased the second-floor space from April 28, 2012 through June 30, 2017. Luma vacated the property in 2016 due to non-payment of its rent. Luma was the last tenant to occupy the second-floor space. From 2010 to present, the main floor has been leased by Hayat Pharmacy. With respect to the basement, United DynaCare, LLC ("DynaCare") began its lease in 2008. DynaCare went out of business before its lease ended. Lab Corp. assumed DynaCare's lease until the lease expired on July 31, 2018. Lab Corp. was the last tenant to occupy the basement space.

### 3.3 The Real Estate Listings

In 2015, Shafi entered into a listing contract with Realty Executives Elite for an exclusive right to sell Shafi Plaza, which contract also included a right to lease Shafi Plaza. Shafi Plaza has not sold. Dr. Shafi believes the property has depreciated due to vandalism in the area and city assessment decreases. Most of the buildings in the area surrounding Shafi Plaza are old. According to David Marek ("Marek"), the listing agent for the property, Shafi Plaza is unique and generates interest among potential tenants because it is a clean, ten-year-old building in an area where other potential rental spaces are 50 to 100 years old. Dr. Shafi listed Shafi Plaza as a medical building and wants any future tenants to be related to the medical field. Dr.

Shafi does not want to rent to another pharmacy in the building, which would compete with the current tenant pharmacy. The property does not have outdoor green space.

Shafi Plaza was not listed for sale or lease on any real estate listing services from April 14, 2017 through March 3, 2021, at which time Marek and Shafi decided to list the property. Between April 2017 and March 2021, potential tenants contacted Marek, but Shafi did not receive any offers, with one exception. Specifically, in February 2018, Shafi received an offer to lease the second-floor retail space, but Shafi and the proposed tenant could not agree on the lease terms, so the potential lease fell through.

After Marek listed Shafi Plaza in 2021, potential tenants inquired about the property, but Shafi did not receive any offers, again with one exception. In July 2021, the Milwaukee County Department of Health Services Behavioral Division ("Milwaukee County") expressed interest in leasing the second floor of Shafi Plaza. On February 2, 2022, Shafi entered into a lease agreement with Milwaukee County, which included an agreement to have $63,696.50 of interior improvements completed before the commencement of the lease term.

### 3.4 The Loss

Shafi Plaza was damaged when a vehicle crashed into it on December 15, 2019 (the "Loss"). At the time of the Loss, there was a directory sign indicating the available lease space and applicable rent, which sign was damaged in the crash and not repaired until March 2020. The damage that resulted when the car crashed into the building occurred mostly on the first floor and to the elevator. Hayat Pharmacy could still access its own space during the construction. The upper and lower levels were not damaged and were still accessible by stairs. Although the elevator

was repaired by some prior date, it did not receive its license and permit until November 10, 2020.

All repairs of the damage caused by the accident were completed by January 31, 2021, except for the inner glass partition to the store window, which was complete by April 28, 2021. Shafi Plaza has been in either a negative cash flow or slight profit since 2018.

**4. ANALYSIS**

The crux of the parties' dispute regarding Shafi's "Failure to Pay Business Income" claim is whether Travelers owes Shafi business income "that would have been earned or incurred as rental income from tenant occupancy of the premises" as defined in Section G.24.a of the Policy. The Policy limits such business interruption insurance to the 12 consecutive months following a loss. Travelers argues that it does not owe Shafi any money because, at the time of the Loss, the units for which Shafi makes a claim (the second and basement levels of Shafi Plaza, hereinafter the "Vacant Spaces") were (1) not occupied, (2) not under contract for future occupancy, and (3) not being marketed for future occupancy. ECF No. 22 at 2. On the other hand, Shafi contends that it intended to and would have listed the Vacant Spaces in 2020, but was not able to do so due to the lack of a working elevator and boarded-up windows as a result of the Loss. ECF No. 25 at 1.

Section 3.a.2 of the Policy provides that, in order to recover business interruption insurance, a policyholder's business "suspension must be caused by direct physical loss of or damage to property at the described premises." Travelers refers the Court to *Dictiomatic, Inc. v. United States Fidelity and Guaranty Co.*, 958 F. Supp. 594 (S.D. Fla. 1997), which examines policy language nearly identical to the language here. ECF No. 22 at 4.

There, the court, collecting cases from a variety of federal and state jurisdictions across the United States, held that a policyholder seeking to recover business interruption insurance must prove five elements:

> [1] that it sustained damage to property that is covered under the policy and [2] that the damage was caused by a covered cause of loss, [3] that there was an interruption to the business ("suspension of operations") which was caused by the property damage, and [4] that there was an actual loss of business income during the period of time necessary to restore the business and [5] that the loss of income was caused by the interruption of the business and not by some other factor or factors.

*Dictiomatic*, 958 F. Supp. at 602. Travelers focuses on the third and fifth elements, arguing that Shafi's "suspension of operations" and lack of rental income were due to the vacancies and Dr. Shafi's lack of marketing efforts prior to the Loss, not the Loss itself. ECF No. 22 at 5. Conversely, Shafi argues that the test proffered by Travelers is incorrect; according to Shafi, the correct test is Wisconsin's "substantial factor approach," which asks "whether the act was 'a cause' rather than 'the cause' of the injury." ECF No. 25 at 5–6 (citing *Reiman Assocs., Inc. v. R/A Advert, Inc.*, 306 N.W.2d 292, 301 (Wis. Ct. App. 1981)). Accordingly, Shafi contends that he need only prove that the Loss was one, among other, factors contributing to his lack of rental income following the Loss.

The Court agrees with Shafi that Wisconsin law applies to this action. Because this case is in federal court by way of diversity jurisdiction, the Court applies the choice of law rules of the forum state: Wisconsin. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Wisconsin law, courts are to apply contract choice of law rules to construction of an insurance policy. *State Farm Mut. Auto. Ins. Co. v. Gillette*, 641 N.W.2d 662,

670 (Wis. 2002). "In contractual disputes, Wisconsin courts apply the 'grouping of contracts' rule, that is, that contract rights must be 'determined by the law of the [jurisdiction] with which the contract has its most significant relationship.'" *Id.* at 670–71 (quoting *American Std. Ins. Co. v. Cleveland*, 369 N.W.2d 168 (Wis. Ct. App. 1985)). Here, the Policy was issued in Wisconsin between Travelers, an insurance company doing business in Wisconsin, and Shafi, a Wisconsin resident. The Policy covers a business in Wisconsin; therefore, Wisconsin is the state with which the Policy has its most significant relationship and Wisconsin law governs interpretation of the Policy.

Shafi is further correct that, in breach of contract actions, Wisconsin applies a substantial factor test. That is, Wisconsin courts look to whether "the defendant's breach was a substantial factor in causing the injury." *Reiman*, 306 N.W.2d at 301. However, the "Failure to Pay Business Income" claim does not turn on an alleged breach by Travelers; it turns on the meaning of the word "caused" in the Policy. In other words, the "actor" here is the Loss, not Travelers. *See* Policy § 3.a.2 ("[S]uspension must be caused *by direct physical loss* of or damage to property at the described premises.") (emphasis added). Contrary to Shafi's argument, when interpreting the word "cause" in a contract, Wisconsin courts apply principles of contract interpretation, not the substantial factor causation test for breach of contract. *See, e.g.*, *Md. Arms Ltd. P'ship v. Connell*, 786 N.W.2d 15, 20–21 (Wis. 2010).

When analyzing the language of a contract, Wisconsin courts "interpret the language consistent with what a reasonable person would understand the words to mean under the circumstances." *Id.* (citations omitted); *see also Colectivo Coffee Roasters, Inc. v. Soc'y Ins.*, 974 N.W.2d 442,

Page 8 of 14
Case 2:21-cv-00861-JPS   Filed 08/08/22   Page 8 of 14   Document 27

446 (Wis. 2022) (when interpreting insurance policies, "[o]ur goal is to give effect to the parties' intent, construing the policy as it would be understood by a reasonable person in the same position as the insured"); *Congress Bar & Rest., Inc. v. Transamerica Ins. Co.*, 165 N.W.2d 409, 412 (Wis. 1969) (analyzing the language of a business interruption clause in an insurance policy by applying principles of contract interpretation).

The parties have not provided, and the Court has been unable to locate, a Wisconsin or Seventh Circuit case interpreting business interruption clause "causation" language similar to the language in the Policy. Wisconsin courts have, however, analyzed causation language in an insurance policy *generally*; in other words, whether an accident or occurrence (here, the Loss) can be said to have caused damage (here, the alleged lost rental income).

Specifically, the Wisconsin Supreme Court instructs that courts must look at the accident or occurrence and then "determine whether a 'causation nexus' exists between the alleged misconduct and the damage claimed." *Smith v. Katz*, 595 N.W.2d 345, 357 (Wis. 1999). "Without such a 'causation nexus,' the alleged occurrence cannot cause" the injury. *Id.* Moreover, "[i]f the cause is interrupted or replaced by another cause, the chain of causation is broken." *Id.* (quoting *Welter v. Singer*, 376 N.W.2d 84, 87 (Wis. Ct. App. 1985)). This District has held similarly. *See Manpower Inc. v. Ins. Co. of the State of Pa.*, No. 08-CV-85-LA, 2009 WL 3738099, at *6 (E.D. Wis. Nov. 3, 2009) ("[T]he collapse was the proximate [or "direct"] cause of Right's loss of its interest in its property . . . . [A]lthough the order of the Department of Public Safety was also a cause of this loss, that order simply recognized that the collapse had rendered the entire building

uninhabitable . . . . The collapse was not remote from the loss, and thus the loss was direct.").

With these principles and the Policy language in mind, the Court determines that the Loss did not cause a suspension in Shafi's rental operations, and that Travelers does not owe Shafi business income. Shafi had not marketed or leased one of the two Vacant Spaces since 2016, or approximately three years prior to the Loss. Shafi had not marketed or leased the other of the two Vacant Spaces since July 2018, or approximately 18 months prior to the Loss. Although Shafi entered into a listing contract with Realty Executives Elite in 2015, Shafi Plaza was not listed for sale on any real estate listing service for the period between April 14, 2017 and March 3, 2021. During this period, specifically in February 2018 (22 months prior to the Loss), Shafi received only one offer to lease one of the Vacant Spaces, but the lease fell through. That Shafi Plaza had a directory sign on its premises advertising available space to rent during this period does not overcome the multitude of facts indicating that Dr. Shafi and Shafi were not actively working to market and lease the Vacant Spaces at the time of the Loss.

While Shafi provides five proposed disputed facts regarding his and Marek's intentions and/or beliefs regarding the marketability of Shafi Plaza, none of those facts involve the period prior to the Loss. All five of them describe Shafi's alleged intentions to market Shafi Plaza in 2020, and Marek's belief regarding Shafi Plaza's marketability in 2020. ECF No. 23 at 9. Shafi's and Marek's opinions following the Loss are not only speculative, but are also insufficient to overcome the undisputed facts that, for years prior to the Loss, Shafi and Dr. Shafi were not marketing Shafi Plaza for rent. *See H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1010 (E.D.

Wis. 2018) ("It is well-settled that speculation may not be used to manufacture a genuine issue of fact."). The fact that Shafi and Marek finally listed Shafi Plaza on real estate listing services in March 2021, which resulted in a lease agreement for one of the Vacant Spaces in February 2022, is similarly unavailing. Simply put, there is no "causation nexus" between the Loss and the lack of rental income, because such income had not been earned—or even sought—for years prior to the Loss. There were no operations for the Loss to "suspend."

Moreover, while repairs attributable to the Loss may have delayed Shafi's after-the-fact decision to market Shafi Plaza until March 2021, the Loss is joined by "[]other cause[s]" that contributed to the lack of rental income during this period. *Smith*, 595 N.W.2d at 357. Indeed, in *Manpower*, where there were multiple causes of an injury (the underlying occurrence and a subsequent administrative order), this District held that the administrative order merely codified the underlying occurrence and did not individually contribute to the injury in a manner sufficient to break the chain of causation. 2009 WL 3738099, at *6. Accordingly, the occurrence was still a "direct" or "proximate" cause of the injury, as distinguished from a "remote" cause. *Id.* Here, Shafi's years-long decision not to market Shafi Plaza prior to the Loss, as well as additional factors (including, *inter alia*, Shafi's decision to lease Shafi Plaza only to medical tenants and the lack of green space in the area), each contributed to the lack of rental income. The Loss was merely a remote cause, if a cause at all.

While Shafi contends that its and Dr. Shafi's intentions following the Loss are material fact issues for the jury, ECF No. 25 at 6, the Court not only disagrees that these facts are material for the reasons discussed above, but also notes that "the respective rights and obligations of the insurer and the

insured [are] questions of law that the court may resolve summarily." *Roman Catholic Diocese of Springfield in Ill. v. Md. Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998). Applying principles of contract interpretation, as well as Wisconsin precedent analyzing similar policy language, the Court finds that, under the circumstances, the word "caused" in the Policy refers to a direct or proximate, and non-remote, cause. Based on the undisputed facts before it, the Court has resolved the parties' respective rights accordingly.

Further, in cases applying principles of contract interpretation to insurance policy business interruption clauses, Wisconsin courts have looked to how other jurisdictions have analyzed identical policy language for guidance. For example, in *Congress Bar*, the Wisconsin Supreme Court analyzed a business interruption clause to discern the meaning of language regarding the length of time the clause was intended to cover following a loss. 165 N.W.2d at 412. The Court turned to cases in other jurisdictions analyzing similar policy language to formulate its interpretation of the language before it. *Id.* & n.1. Similarly, in *Colectivo Coffee Roasters*, the Wisconsin Supreme Court reviewed cases in other jurisdictions interpreting similar policy language to determine whether the COVID-19 pandemic constituted a "loss" under the parties' insurance policy. 974 N.W.2d at 447.

Here, Travelers refers the Court to *Dictiomatic*, where the court analyzed near-identical policy language to the Policy here. *Compare* 958 F. Supp. at 601 ("The suspension must be caused by direct physical loss or damage to Covered Property."), *with* Policy § 3.a.2 ("The 'suspension' must be caused by direct physical loss of or damage to property at the described premises."). After reviewing a series of opinions from jurisdictions across the United States interpreting similar language, the *Dictiomatic* court formulated its five-factor test, *see supra* page 7, and held that recovery

requires a showing that the alleged lost business income is caused by the underlying occurrence "and not by some factor or other factors." *Id.* at 602–03. Contrary to Shafi's argument that the decision is inapposite because it was issued following an eleven-day trial, ECF No. 25 at 5 n.1, the procedural posture of the case does not change the court's establishment of a legal standard applicable to the facts. The *Dictiomatic* test further reinforces the Court's holding as based on Wisconsin law.

Shafi finally argues that it is owed business interruption insurance because "there is nothing in the Policy that requires the Property to have been leased, to be under contract for lease, or to be actively marketed at the time of the incident." ECF No. 25 at 3. In support of this argument, Shafi quotes *Ventura Kester, LLC v. Folksamerica Reinsurance Co.* for the proposition that "[i]f the insurer had wanted to limit the recovery or calculate the rents based on existing tenants at the time of the building damage, it clearly could have written the policy to provide that." 161 Cal. Rptr. 3d 875, 883 (Cal. Ct. App. 2013). However, in *Ventura*, the loss drove a tenant who had signed a letter of intent to lease the property prior to the loss to ultimately decline to lease. *Id.* at 637. While Shafi is correct that the Policy does not require a tenant at the time of a loss for recovery, the facts here—where no tenant was imminent at the time of the Loss, nor had one even been actively sought for years—are a far cry from those in *Ventura*.

Because the Court determines that the Loss did not "cause," pursuant to the language of the Policy and applicable case law, any suspension of operations or lost business income to Shafi, it grants Travelers' motion for partial summary judgment. Consequently, the Court need not reach the parties' arguments regarding whether Shafi's lost rent calculations are supported. ECF No. 22 at 8; ECF No. 25 at 8.

5.  **CONCLUSION**

For the reasons explained above, the Court grants Travelers' motion for partial summary judgment as to Shafi's second cause of action for "Failure to Pay Business Income," ECF No. 22.

Accordingly,

**IT IS ORDERED** that Defendant Travelers Casualty Insurance Company of America's motion for partial summary judgment as to Plaintiff Shafi Enterprises, LLC's second cause of action for "Failure to Pay Business Income," ECF No. 22, be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 8th day of August, 2022.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge